José V. MELÉNDEZ GONZÁLEZ,

v.

OFICINA DE ADMINISTRACIÓN DE LOS TRIBUNALES, et al, Defendants.

No. CIV. 00–1332(HL).

· United States District Court, D. Puerto Rico.

Aug. 30, 2002.

Guillermo J. Ramos–Luina, San Juan, PR, for Jose V. Melendez–Gonzalez, plaintiff.

Alfredo Fernandez–Martinez, San Juan, PR, for Oficina de Administracion de Tribunales, defendant.

Roberto A. Fernandez–Quiles, Lespier & Munoz Noya, San Juan, PR, for Public Building Administration, defendant.

Mercedes M. Bauermeister, Heriberto Sepulveda–Santiago, for defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

■ Before the Court is a motion by Plaintiff José Meléndez González ("Meléndez") for a preliminary injunction hearing. Also pending before the Court are motions to dismiss by Defendants Oficina de Administración de los Tribunales ("OAT"), Mercedes Bauermeister, and Heriberto Sepúlveda Santiago ("Sepúlveda"). The OAT is a public agency charged with administering Puerto Rico's judicial system. Bauermeister is the agency's director; Sepúlveda is the director of the OAT's Bayamón region. Meléndez is a municipal judge. He is also quadriplegic. He brings this claim for monetary and injunctive relief pursuant to the Americans with Disabilities Act[1] ("ADA") and the Rehabilitation Act of 1973.[2]

Before the Court can rule on the motion for a preliminary injunction hearing, it is necessary to address the motions to dismiss and to delineate the scope of this cause of action. Meléndez alleges that the OAT has refused to reasonably accommodate him by authorizing the local marshal service to use a special vehicle for transporting him to site inspections and to assist him in filling out official forms. He further alleges that the OAT has refused to provide him with a courtroom in which he can hold judicial proceedings. He claims that this refusal precludes him from participating in the programs of public entities and constitutes a hostile work environment.

### 1. ADA claim

Meléndez brings his ADA claim pursuant to Title II of that statute. See 42 U.S.C.A. §§ 12131 – 12165. Title II provides that

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Id. § 12132. Under this section a public entity must make its services and programs readily available to and usable by individuals with disabilities. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5

---

1. 42 U.S.C.A. §§ 12101 – 12213 (West 1995 & Supp.2002).

2. 29 U.S.C.A. §§ 701 – 796l (West 1999 & Supp.2002). Meléndez also brings a claim pursuant to Puerto Rico Law 44, the local statute on disability discrimination. 1 P.R.Laws Ann. §§ 501 – 511 (1999). States or arms of the state are protected by the Eleventh Amendment from money damage suits in

federal court. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72–73, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000). Moreover, a federal court may not enjoin state officials to conform their conduct to state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Therefore, Meléndez' Law 44 claims for both monetary and injunctive relief are barred in federal court.

(1st Cir.2000). Meléndez claims that Defendants' failure to provide him with a courtroom and other facilities constitutes a denial of access to the programs of a public entity. The Court treats his Title II claim to be based on this theory.

■ Meléndez also claims that he has been subject to a hostile work environment. Thus, he also attempts to bring this claim as one for employment discrimination. However, as Meléndez has specifically pointed out in his pleadings, he is proceeding under Title II only. *See* docket no. 59, at 2; docket no. 13. Title II does not apply in the employment context. *Zimmerman v. Oregon Dep't of Justice,* 170 F.3d 1169, 1172–84 (9th Cir.1999). Therefore, the Court finds that Meléndez may not use Title II to bring his claims of employment discrimination.[3]

■ Meléndez seeks injunctive relief for his Title II claim. In their motions to dismiss, Defendants argue that this form of relief is not available because, under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), injunctive relief is only available for actions by state officials which are unconstitutional. Defendants go on to argue that, as Melén-dez has not alleged any unconstitutional conduct, *Ex parte Young* does not apply. Defendants are incorrect. Under the *Young* doctrine, federal courts may grant "prospective injunctive relief to prevent a continuing violation of *federal* law." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (emphasis added); *see also Kiman v. New Hampshire Dep't of Corrections,* 301 F.3d 13, 17 n. 2 (1st Cir.2002) ("*Garrett* made clear that all of the ADA still binds the states and can be enforced by private individuals through *Ex parte Young* suits for injunctive relief against state officials."); *Mills v. State of Maine,* 118 F.3d 37, 54 (1st Cir.1997) (*Ex parte Young* allows a way around the Eleventh Amendment "only in cases where prospective declaratory or injunctive relief is sought under *federal* law.") (emphasis added); Erwin Chemerinsky *Federal Jurisdiction* § 7.5.1, at 413 (3d ed.1999). Defendants' proposed application of the *Young* doctrine is too narrow. For injunctive relief to be available, the state actor need only be acting in violation of federal law. Thus, the Court denies this argument. Meléndez' claim for injunctive relief under Title II of the ADA may proceed.[4]

---

**3.** The Court is cognizant that there is a split among the courts as to whether Title II is applicable in the employment discrimination context. *See Currie v. Group Ins. Comm'n,* 290 F.3d 1, 6–7 (1st Cir.2002) (Discussing the divergent views on this issue and noting that the answer to this question is not clear). The Court holds that Title II is not applicable for the following reasons. First, the Court finds convincing the Ninth Circuit's exhaustive analysis of this issue in *Zimmerman. See* 170 F.3d at 1172–84.

Second, a rule that did allow state employees to bring Title II claims for employment discrimination would essentially eviscerate the Supreme Court's recent ruling that state employees may not bring employment discrimination claims under Title I. *See Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 374, 121 S.Ct. 955, 967–68, 148 L.Ed.2d

866 (2001). Under such a rule, state employees claiming disability-based discrimination could obviate the effect of *Garrett* merely by citing to Title II instead of Title I. This Court is not inclined to take such a step, absent clear guidance from the First Circuit on this issue.

**4.** Originally, Meléndez had also brought a claim for money damages under the ADA. In the wake of the Supreme Court's decision in *Garrett,* this Court dismissed those claims. *See* docket nos. 40 & 41. The First Circuit recently held that in some circumstances, a plaintiff may sue the state for money damages under Title II of the ADA. *See Kiman,* 301 F.3d 13. Because Meléndez is not currently seeking money damages pursuant to the ADA, the Court need not address whether the facts of his case are sufficient under *Kiman* to

### 2. Rehabilitation Act claim

■ Meléndez also brings his claim pursuant to section 504(a) of the Rehabilitation Act.[5] 29 U.S.C.A. § 794(a). A plaintiff proceeding under this section must prove that (1) he is disabled, (2) he sought services from a federally funded entity, (3) he was otherwise qualified to receive these services, and (4) he was denied them solely by reason of his disability. *Lesley v. Hee Man Chie*, 250 F.3d 47, 52–53 (1st Cir. 2001). One of the requirements for such a claim is that the defendant must have received federal financial assistance. *Id.* at 53; 29 U.S.C.A. § 794(a). Additionally, section 504 may be brought both in the employment context, as well as for the denial of the services of a federally funded entity. A section 504 employment discrimination claim is analyzed under the same standards as those for a Title I ADA claim. *Oliveras–Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 25 n. 2 (1st Cir.2000).

■ In the present case, Defendants move to dismiss on the grounds that the OAT does not receive federal funding. Meléndez has submitted evidence that the OAT entered into agreements with the Puerto Rico Department of Justice for a "drug court" program. It appears that the program was paid for, at least in part, by funds that the Department of Justice had received from the federal government.[6] The mere fact that an entity has received federal money may not be sufficient to bring it under the aegis of the Rehabilitation Act. Coverage under the act does not follow the federal funding past the original intended recipient to those entities which merely derived some benefit from the aid or received compensation for services rendered pursuant to a contract. *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 120 (7th Cir.1997); *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir.1996). Generally, financial assistance will incur Rehabilitation Act liability if the funding is in some form of a subsidy. *De Vargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir.1990); *see also* James Lockhart, Annotation, *Who is Recipient of, and what Constitutes Program or Activity Receiving, Federal Financial Assistance for purposes of § 504 of Rehabilitation Act (29 U.S.C.A. § 794), which Prohibits any Program or Activity Receiving Financial Assistance from Discriminating on Basis of Disability*, 160 A.L.R.Fed. 297 (2000); Heidi A. Reamer, *Defining Recipients of Federal Financial Assistance under the Nondiscrimination Statutes*, 57 WASH. & LEE L.REV. 1355 (2000).

In the present case, the record demonstrates that the OAT received some indirect federal funding through its contracts with the Puerto Rico Department of Justice. Defendants did not respond to Meléndez' submission of this evidence with any evidence or arguments to explain the nature of these contracts. The Court will assume, for now, that the OAT has received federal financial assistance. Defendants may resubmit this issue to the Court after the record has been more fully developed on the nature of these contracts.[7]

overcome Eleventh Amendment immunity in the context of a Title II ADA claim.

**5.** In an order ruling on an earlier motion by OAT, the Court treated the motion as one for summary judgment and dismissed Meléndez' Rehabilitation Act claims on the grounds that there was no evidence that the agency received federal funding. Docket no. 40. In response, Meléndez moved for reconsideration of this ruling. Docket no. 44. The Court then granted Meléndez leave to conduct discovery on this issue. Docket no. 49. Subsequently, Meléndez filed a third amended complaint which included Rehabilitation Act claims. He also submitted a response to OAT's original motion on this issue. Docket no. 63.

**6.** Docket no. 63, exhibits 1 – 6.

**7.** As noted above, Meléndez' claims under the ADA for injunctive relief may proceed. Thus,

The Court notes that another aspect of the Rehabilitation Act claim may require further development. In recent years, beginning with *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court has issued a series of opinions reexamining the scope of the states' Eleventh Amendment immunity. The Court's opinion in *Garrett* is another in this line of cases. In the wake of this jurisprudence, lower courts have had occasion to consider whether the Rehabilitation Act abrogates the Eleventh Amendment. Their answers have been mixed. *See Reickenbacker v. Foster*, 274 F.3d 974, 983–84 (5th Cir.2001) (Since Congress had not validly acted through its Fourteenth Amendment section 5 power to abrogate state sovereign immunity, Rehabilitation Act against the state should be dismissed); *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 113–15 (2nd Cir. 2001) (New York was not liable under section 504 because it had not knowingly waived its sovereign immunity); *Jim C. v. United States*, 235 F.3d 1079, 1082 (8th Cir.2000) (State agency waived its immunity with respect to section 504 suits when it accepted federal funding); *Shepard v. Irving*, 204 F.Supp.2d 902, 915–19 (E.D.Va. 2002) (same); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 171 F.Supp.2d 389, 408–09 (D.N.J.2001) (same). In the present case, the parties have not addressed this issue. Accordingly, the Court will not, at present, wade into this thicket. Instead, it will assume for now that Meléndez' Rehabilitation Act claim is not barred by the Eleventh Amendment.

█ The Court adds a final point. Any claims for injunctive relief may only be brought against the named individual defendants in their official capacity. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 145–46, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir.2002); *Neo Gen Screening, Inc. v. New England Newborn Screening Program*, 187 F.3d 24, 28 (1st Cir.1999). Thus, Meléndez' claims for injunctive relief may only proceed against Bauermeister and Sepúlveda.

WHEREFORE, based on all of the above the Court grants in part and denies in part the motions to dismiss filed by the OAT, Bauermeister, and Sepúlveda (docket nos. 64, 65, and 68). The Court considers Meléndez' claim under Title II of the ADA to be limited to a claim that Defendants failed to provide him with a courtroom and other facilities, thereby denying him access to the programs of a public entity. His Rehabilitation Act survives in its entirety. His Law 44 claim is dismissed without prejudice.

Additionally, the Court grants Meléndez' motion for a preliminary injunction hearing (docket no. 71). The hearing will be consolidated with Meléndez' claim for a permanent injunction, pursuant to Rule 65(a)(2). *See Aponte v. Calderon*, 284 F.3d 184, 190–91 (1st Cir.2002). The Court will issue an order to show cause separate from the present opinion and order.

**IT IS SO ORDERED.**

regardless of whether his Rehabilitation Act claim ultimately survives, he is entitled to a preliminary injunction hearing on his ADA claim. Accordingly, at this stage of the proceedings the Court deems it appropriate to await further development of the evidence on whether the OAT received federal funding as required under the Rehabilitation Act.