Ivette **GONZÁLEZ–NIEVES**, Plaintiff,

v.

Cesar **MIRANDA**, et al., Defendants.

**CIVIL NO. 16–2502 (GAG)**

United States District Court,
D. Puerto Rico.

Signed 09/15/2017

Atabey Y. Lamela–Gandia, Denise Maldonado–Rosa, San Juan, PR, for Plaintiff.

Idza Diaz–Rivera, P. R. Department of Justice, San Juan, PR, Ivan Solares–Nunez, Puerto Rico Insurance Commissioner's ·Office Management Department, Guaynabo, PR,·for Defendant.

## OPINION AND ORDER

GUSTAVO A. GELPI, UNITED STATES DISTRICT JUDGE

Ivette González–Nieves ("Plaintiff") filed the present suit against Cesar Miranda, in his official capacity as Puerto Rico's Attorney General, Vance Thomas, in his official capacity as Secretary of the Puerto Rico Department of Labor and Human Resources ("DLHR"), and Iván Clemente Delgado, in his official capacity as Administrator of the DLHR's Vocational Rehabilitation Administration ("VRA") (collectively "Defendants"), alleging violations to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et. seq.* ("Rehabilitation Act"), and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

After reviewing the filings and the applicable law, Defendant's motion to dismiss is **GRANTED·in part and DENIED in part.**

## I. Relevant Factual and Procedural Background

The. VRA rehabilitates physically and emotionally disabled individuals; with the ultimate purpose of enabling these individuals to ·re-enter society as productive members of their communities. (Docket No. 13, ¶ 3.2.) The VRA is a governmental agency that receives federal funding. Id.

Plaintiff was initially employed as a secretary at the VRA. Id. ¶ 3.3. In· April of 2011 she was named Vocational Rehabilitation Counselor. Id. ¶ 3.3. Plaintiff holds a master's degree from the University of Puerto Rico in this field. Id. As Vocational Rehabilitation Counselor, she was responsible for providing counseling services to individuals with disabilities. Id. The VRA

is supposed to provide Vocational Rehabilitation Counselors with an assistant, because they are responsible for keeping detailed records, and purchasing products necessary to facilitate consumer rehabilitation efforts, among other clerical tasks. Id. ¶ 3.6. If a Vocational Rehabilitation Counselor is not provided to an assistant, the immediate supervisor is supposed to assist the counselor and/or assign other help. Id. Plaintiff, however, was not provided with an assistant nor was she provided with any assistance by her immediate supervisor. Id. On the contrary, around 2013 her supervisors began increasing her case load beyond the amount normally required for the position. Id. ¶ 3.4.

Plaintiff has a diagnosed condition of major depression, which worsens upon interaction with the general public and other stressful factors. Id. ¶ 3.1. Due to this work-related disability, around October 2015, Plaintiff made a written request for reasonable accommodation in her workplace consisting of a reassignment of some of her duties and a relocation of her work area. Id. ¶¶ 3.8–3.11. The request was recommended by her psychiatrist Dr. Jorge Valentín Flores, who advised Plaintiff to avoid interactions with "the public and clients because it exacerbates and worsens her condition." Id. ¶ 3.10. Plaintiff also requested a full time assistant, which other Vocational Rehabilitation Counselors—without any known disabilities—had. Id. ¶¶ 3.9–3.10. The VRA never responded to Plaintiff's requests for reasonable accommodation. Id. ¶ 3.11

Plaintiff was terminated from her employment on July 11, 2016, based on the VRA's contention that she could not perform the essential functions of the position she occupied. Id. ¶¶ 3.11–3.13.

On April 6, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Id. ¶ 3.15. The EEOC issued a Dismissal and Notice of Rights on May 18, 2016, which Plaintiff received on May 26, 2016. (Docket Nos. 13, ¶ 3.15; 13–1.) Plaintiff filed the present suit on August 17, 2016, and subsequently filed an Amended Complaint on August 31, 2017. (Docket Nos. 1 and 13.)

Defendants move to dismiss all of Plaintiff's claims under Rule 12(b)(1), arguing that Plaintiff failed to adequately exhaust administrative procedures. (Docket No. 27, at 13–14.) Defendants further posit that dismissal under Rule 12(b)(6) is warranted, given that Plaintiff was not qualified to perform the essential functions of her job and thus fails to state a claim for which relief may be granted. Id. at 7–10. Finally, Defendants contend that the Eleventh Amendment to the U.S. Constitution precludes Plaintiff's claims for monetary relief against Commonwealth officials in their official capacity. Id. at 19–21. Plaintiff did not oppose Defendants' motion.

## II. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See FED. R. CIV. P. 12(b)(6), see also Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual

allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937. Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556, 127 S.Ct. 1955.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio–Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937).

## III. Applicable Law and Analysis

Given their jurisdictional nature, the Court will first address Defendants' arguments related to Plaintiff's alleged failure to timely exhaust administrative remedies. Then, the Court will attend to the issue of whether the Eleventh Amendment precludes any claims for monetary relief against Defendants, all of whom are sued in their capacity as officers of the Commonwealth. Lastly, the Court will turn to the merits of Plaintiff's discrimination claims under the ADA and the Rehabilitation Act.

### A. Exhaustion of Administrative Remedies

An employee must exhaust administrative remedies before filing an ADA suit in federal court. Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 84–85 (1st Cir. 2008) (citing Love v. Pullman Co., 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)) ("The Title VII administrative process begins with the filing of an administrative charge before the EEOC."); see also Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999) (holding that ADA claims must comply with the same administrative procedure requirements as claims under Title VII). The purpose of filing an administrative charge as a prerequisite to commencing a civil action is to promote early conciliation between the parties, as well as to provide prompt notice of the claim to the employer. Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). Subject to limited exceptions, failure to exhaust administrative remedies closes the door to federal court. Velazquez–Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011) (quoting Franceschi, 514 F.3d at 85).

Defendants challenge the Court's jurisdiction to hear Plaintiff's claims on two grounds related to the exhaustion of administrative remedies: (1) that Plaintiff's EEOC discrimination charge was time-barred and (2) that the allegations in the charge are different to the ones raised in the complaint to the effect that the VRA did not receive formal notice of the nature claims now being levied against it.

### 1. Timeliness of the EEOC Charge

Defendants claim that Plaintiff's EEOC charge was time-barred, as it was

not filed within "180 days after the alleged unlawful employment practice occurred[.]" (Docket No. 27 at 8.) However, since Puerto Rico is what is known as a "deferral jurisdiction" and the DLHR is an agency empowered to grant relief from unlawful employment practices, a plaintiff has 300 days to file the charge, instead of the 180 day period alluded to by Defendants. See 42 U.S.C. § 2000e–5(e); 29 C.F.R. § 1601.74; see also Bonilla, 194 F.3d at 278 n.4.

According to the EEOC charge filed by Plaintiff, the earliest (and latest) date in which the alleged discrimination took place was October 1, 2015. (Docket No. 32–1, at 1.) The EEOC charge was filed on April 6, 2016. Id. In other words, it was filed 188 days after the earliest date in which the alleged discrimination took place. Thus Defendants' argument fails since the charge was timely under the applicable provisions of 42 U.S.C. § 2000e–5(e).

### 2. Relation between the EEOC charge and the Complaint

■ The fact that an EEOC charge has been filed "does not open the courthouse door to all claims of discrimination." Velazquez–Ortiz, 657 F.3d at 71. The federal court complaint must "bear some close relation" to the allegations made in the administrative complaint. Id. (citing Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005). In other words, the allegations formulated in the EEOC charge constrain the permissible scope of the future federal court complaint. Id. at 71. Although the specific language used in the factual statement of the EEOC charge does not determine the scope of the civil action, at a minimum it must alert the employer as to the basis of the discrimination claim that the employee seeks to pursue in federal court. Id. (citing Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 32 (1st Cir. 2009)).

■ The "scope of the investigation rule" allows an employee to include in the complaint claims related to acts of discrimination that the EEOC investigation could have been reasonably expected to uncover, regardless of whether they were actually investigated. Thornton, 587 F.3d at 31–32 (citing Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001)). This rule allows a district court to "look beyond the four corners of the underlying administrative charge" to determine whether the employee exhausted the required administrative remedies. Id. at 33. District courts must not allow a plaintiff, however, "to extend his claim endlessly beyond the bounds and parameters encompassed by the administrative charge." Id. at 32.

■ Defendant argues that Plaintiff did not exhaust administrative remedies regarding her disability discrimination claims, as the EEOC charge only checked the "retaliation box," did not check the corresponding box related to discrimination based on disability, and did not contain any allegations of discrimination based on her disability. (Docket No. 27 at 9–10.) Based on a careful reading of Plaintiff's allegations in the EEOC charge, it is clear that they are reasonably related to those in the Complaint and thus the VRA was afforded due notice as to the alternative basis of the discrimination claim that the Plaintiff now pursues in federal court. See Velazquez–Ortiz, 657 F.3d at 71. Specifically, the EEOC charge states the following:

I understand that the department erred when it interpreted the ADA Act. It is correct that I am a person with a disability, it is also true that I can do my job with or without reasonable accommodation. The relocation accommodation of the workplace environment would mean being able to continue performing the duties of the Counselor position in another work zone without exposing my-

self to situations in which my multiple conditions worsen. I request a reevaluation of my reasonable accommodation. (Docket No. 32–1, at 2.) The Court thus finds the allegations in the EEOC charge to be sufficiently related to those in the Complaint so as to conclude that Plaintiff effectively exhausted the administrative procedures that were due.

### B. Eleventh Amendment Immunity

The Eleventh Amendment bars suits in federal courts for damages against any state without its consent. Grajales v. Puerto Rico Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016) (citing Hans v. Louisiana, 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). The First Circuit has consistently held that the Commonwealth of Puerto Rico is protected by this immunity. Id. (citing Jusino Mercado v. Commonwealth of P.R., 214 F.3d 34, 39 (1st Cir. 2000)). Eleventh Amendment immunity protects the state and the arms or alter egos of the state. Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of the Commonwealth of P.R., 818 F.2d 1034, 1036 (1st Cir. 1987). Additionally, the Eleventh Amendment protects a state official from suits against him or her in his or her official capacity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]" which "is no different from a suit against the State itself.").

In the case at bar, all of the defendants were sued in their official capacities as heads of the Puerto Rico Department of Justice, the DLHR and the VRA, respectively. (See Docket No. 13, at 1.) These entities have all been held to be arms of the Commonwealth and thus their officials are shielded by the Eleventh Amendment from monetary claims against them in their official capacity. See Toledo–Colón v. Puerto Rico, 812 F.Supp.2d 110, 119 (D.P.R. 2011).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss all of Plaintiff's claims for monetary relief under the ADA, the Rehabilitation Act, and any local statute referenced in the Amended Complaint. These claims are hereby **DISMISSED with prejudice.**

### C. Prospective Injunctive Relief under Title I of the ADA

The Supreme Court has held that actions against state actors in their official capacities for injunctive or prospective relief from conduct in violation of federal law are not barred by the Eleventh Amendment. See Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); see also Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015) (citing Ex parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus, Plaintiff's surviving claims under the ADA and the Rehabilitation Act may only pursue prospective injunctive and/or equitable relief.

In order to state a claim of disability discrimination under Title I of the ADA, Plaintiff must allege facts showing that: (1) she was disabled within the meaning of the Act; (2) she could perform the essential functions of her job, with or without reasonable accommodation; and (3) the employer took adverse action against her, in whole or in part, because of her disability. Roman–Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011); Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008).

Defendants do not dispute that Plaintiff was disabled as defined by the ADA. (Docket No. 27, at 7.) The third prong of a

Title I ADA claim—whether Defendants terminated Plaintiff's employment, in whole or in part, because of her disability—is also implicitly undisputed, as Defendants' core argument is that Plaintiff was terminated due to her inability to interact with the "general public and [the VRA's] clients" which they do not dispute was due to her disability. Id. at 13–14. Thus the only true controversy between the parties is whether Plaintiff was able to perform to essential duties of her position at the VRA with the accommodations that she requested (which were denied), and whether those accommodations were reasonable and did not place an undue burden on the VRA.

The Amended Complaint clearly concedes that the essential functions of Plaintiff's position, Vocational Rehabilitation Counselor, include providing counseling services to disabled "clients" of the VRA. (See Docket No. 13 ¶ 3.3.) It seems inescapable that providing counseling services to physically or emotionally disabled individuals necessarily involves interactions "with general public and clients with disabilities" and yet the reasonable accommodation requested by Plaintiff "was that the work-area and *functions* be reassigned as recommended by her physician to avoid stressful *interaction* with general public *and clients with disabilities* and to perform *other* duties compatible with her position while receiving her treatment." Id. ¶ 3.8 (emphasis added).

The Amended Complaint does not mention which other "duties compatible with her position" she requested to be assigned, much less how complying with these duties would make it feasible for her to satisfy the essential functions of her position. More so, it does not mention *any* other duties compatible with her position as Vocational Rehabilitation Counselor other than the clerical duties which she had to perform as part of her services to the VRA's clients.

Under First Circuit precedent, Plaintiff's request to be relieved from interactions with "clients with disabilities" as a Vocational Rehabilitation Counselor is unreasonable, as it was an undisputable essential function of that position. See Feliciano v. State of R.I., 160 F.3d 780, 785 (1st Cir. 1998) ("The ADA does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous."); see also Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 23 (1st Cir. 2004) (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001) ("To show that a proposed accommodation was reasonable, a plaintiff must prove 'not only *that the proposed accommodation would enable her to perform the essential functions of her job*, but also that, at least on the face of things, it is feasible for the employer under the circumstances.' ") (emphasis added).

The fact that Plaintiff was not able to perform the essential functions of her position as Vocational Rehabilitation Counselor, however, does not "end the analysis" under the ADA claim, as a reasonable accommodation "may include 'reassignment to a vacant position.' " Feliciano, 160 F.3d at 786 (citing 42 U.S.C. § 12111(9)(B)). To this effect, Plaintiff applied for the position of Evaluation and Adjustment Analyst, which Plaintiff was qualified for and did not involve interaction with "clients" or the general public. (Docket No. 13 ¶ 3.13.)

As this accommodation was rejected by Defendants, and no further efforts were made to accommodate Plaintiff's disability, at this stage the Court must conclude that the Amended Complaint sufficiently pleads a *prima facie* case of discrimination under

Title I of the ADA. Plaintiff must be allowed the benefit of discovery to meet her burden of showing that her request to be reassigned was reasonable, as well as Defendants must be allowed the opportunity set forth evidence that such reassignment presented an undue hardship on its operations. As a result, Defendants' motion to dismiss Plaintiff's claim for prospective injunctive relief under Title I of the ADA is **DENIED**.

### D. Claims under the Rehabilitation Act of 1973

■ The Rehabilitation Act "applies to federal agencies, contractors and recipients of federal financial assistance"[.] Calero–Cerezo, 355 F.3d at 19. The term "federal assistance" does not imply that any entity that has received funds from the Federal Government falls within the purview of the Rehabilitation Act, but rather those which have received funding in "some form of a subsidy." Melendez Gonzalez v. Oficina de Administración de los Tribunales, 218 F.Supp.2d 227, 230 (D.P.R. 2002) (citing DeVargas v. Mason & Hanger–Silas Mason Co., 911 F.2d 1377, 1382 (10th Cir.1990)).

■ Defendants move for dismissal of Plaintiff's claims under the Rehabilitation Act, arguing that the statute does not apply to the present case because "[t]he Amended Complaint is completely devoid of any factual pleading that the Vocational Rehabilitation Counselor position Plaintiff had, or the Analyst position she applied for were in any way federally funded." (Docket No. 27, at 18.) At this stage, the Court must rejects Defendant's narrow interpretation of the Rehabilitation Act. As the Amended Complaint states that the VRA "receives federal funding" (Docket No. 13 ¶ 3.2), the Court concludes that it is proper to allow Plaintiff the opportunity to present evidence that the federal assistance which the VRA receives makes the Rehabilitation Act applicable to the present case. Accordingly, Defendants' motion to dismiss Plaintiff's claim for injunctive relief under the Rehabilitation Act is **DENIED**.

### E. Other Constitutional and Supplemental Claims

In the Amended Complaint's jurisdictional statement, Plaintiff argues that the Court "also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear and adjudicate causes of action arising under" Puerto Rico law. (Docket No. 13, ¶ 1.2.) However, the Amended Complaint is completely devoid of any allegations of violations of Puerto Rico's laws, and neither of the causes of action, nor the prayer for relief, alludes to any of the local statutes mentioned in the jurisdictional statement. Id. ¶¶ 4.01–4.14.

Similarly, the Amended Complaint fails to address why Plaintiff is entitled to relief under the Equal Protection Clause of the Fourteenth Amendment. As a result, to the extent that Plaintiff intended to pursue claims under said statutes, they are deemed waived and are **DISMISSED with prejudice**. See F.T.C. v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 8 (1st Cir. 2010) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's claims for prospective injunctive relief under Title I of the ADA and the Rehabilitation Act is **DENIED**. Defendants' motion to dismiss all remaining claims, including those for monetary relief, is **GRANTED** and all

such claims are hereby **DISMISSED with prejudice.**[1]

**SO ORDERED.**

---

1. As the only remaining claims seek prospective injunctive relief, PROMESA's automatic stay is not applicable to the present action.

See Vázquez–Carmona v. Dept. of Ed. of P.R., No. 16–1846, 255 F.Supp.3d 298, 2017 WL 2352153 (D.P.R. May 31, 2017).