**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2085
_____

ANNE MARIE CRONIN,
Appellant

v.

BOOZ ALLEN HAMILTON INC;
JESSICA KOZAK; SUZETTE MITCHELL; LESLIE ESPOSITO;
JANE DOES 1-10 (fictitious persons whose identities are currently unknown);
ABC CORPORATIONS 1-10 (fictitious entities whose identities are currently unknown);
JOHN DOES 1-10 (fictitious persons whose identities are currently unknown)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:18-cv-12642)
District Judge: Honorable Brian R. Martinotti
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 12, 2022

Before: KRAUSE, BIBAS and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed August 15, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Anne-Marie Cronin appeals pro se from the District Court's April 30, 2021 order granting summary judgment against her in this employment-discrimination action that she brought against her former employer, Booz Allen Hamilton, Inc. ("Booz Allen"). For the following reasons, we will affirm.

I.

Booz Allen "provides management, technology, consulting, and engineering services to the private sector, as well as [to] domestic and international governments." Dist. Ct. Op. entered Apr. 30, 2021, at 2 [hereinafter Dist. Ct. Op.]. Cronin was employed in Booz Allen's Human Resources ("HR") Division from April 2004 until her position was eliminated in August 2017. Although she served in an associate-level position throughout her tenure at Booz Allen, the title of that position changed over time. It ultimately became known as "Human Resources Business Partner" ("HRBP").

In 2015, Booz Allen decided to transition from its existing HR software platform to a new platform called Workday. The switch to Workday would provide Booz Allen's "business units with 'access on demand' to HR information[,] which [would] enable[] the business units to perform their own HR transactions[] instead of going through an HRBP." Id. at 5. In light of this transition, Booz Allen decided that it would replace the HRBP role with one that "filled the more strategic and proactive role of an advisor and consultant regarding future business needs." Id. at 5–6. This new position would be called "Human Resources Talent Consultant" ("HRTC").

2

In March 2017, Booz Allen informed Cronin and her colleagues that the HRBP role was being eliminated and that they would have an opportunity to apply for an HRTC position—a lateral move and not a promotion. The HRBPs were not told how many HRTC positions would be available, just that there would be fewer, though it was made clear that internal candidates—whether HRBPs or otherwise—would be interviewed and selected before Booz Allen posted the position externally.

A three-person committee led by Suzette Mitchell was responsible for hiring HRTCs. At the beginning of the hiring process, Mitchell asked the HRBPs' individual managers to provide feedback on each applicant, including a numerical ranking on a one-to-three scale according to the manager's impression of the applicant's suitability for the HRTC role. In addition to reviewing these numerical rankings and associated feedback, the hiring committee reviewed each applicant's resumé and his or her annual performance review for 2016. The hiring committee then interviewed the applicants, asking each of them the same five questions.

Thirty-four HRBPs employed by Booz Allen at the time of the transition applied for the HRTC role, and 20 were selected. Eleven of the 23 applicants who were age 40 or older were selected to be HRTCs, and one of the 12 applicants who were not selected was retained in another position. Meanwhile, nine of the 11 applicants under age 40 were selected to be HRTCs, and the two applicants who were not selected were retained in other positions. One other internal Booz Allen employee—an individual over age 40 who had not been an HRBP—also was hired as an HRTC. Booz Allen later hired

3

external candidates to fill the remaining HRTC positions. Once the hiring process was complete, the percentage of HRTCs who were age 40 or over (63.6%) was very close to the percentage of HRBPs who were age 40 or over before the transition (65.2%). Cronin, who was over age 40, was not selected for an HRTC position, and Booz Allen terminated her employment in August 2017.

Cronin subsequently filed suit against Booz Allen in the Superior Court of New Jersey for Monmouth County, alleging age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq.,[1] and intentional infliction of emotional distress. Booz Allen removed the case to the United States District Court for the District of New Jersey. After the parties conducted discovery, Booz Allen moved for summary judgment. The District Court granted that motion, and this timely appeal followed.

---

[1] Although Cronin's appellate briefing also mentions the Age Discrimination in Employment Act ("ADEA"), she did not include an ADEA claim in her complaint. See App. at 428–35. And she may not pursue this claim for the first time on appeal. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 n.12 (3d Cir. 2013).

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291,[2] and we exercise plenary review over the District Court's grant of summary judgment.  See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party, in whose favor all justifiable inferences are drawn.  See Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011).  We construe Cronin's pro se filings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## III.

The NJLAD provides, in pertinent part, that "[a]ll persons shall have the opportunity to obtain employment . . . without discrimination because of . . . age."  N.J. Stat. Ann. § 10:5-4.  An age-discrimination claim under the NJLAD may proceed under a theory of disparate treatment, disparate impact, or both.  See Gerety v. Atl. City Hilton Casino Resort, 877 A.2d 1233, 1237–38 (N.J. 2005).  The theories differ in that "[p]roof

---

[2] Following removal from New Jersey state court, the District Court properly exercised jurisdiction over this diversity action.  See 28 U.S.C. §§ 1332, 1441(b).  Although Cronin's complaint named some individual defendants, Booz Allen was the lone named defendant served with process, and as such is the only relevant defendant for assessing our appellate jurisdiction.  See Gomez v. Gov't of the V.I., 882 F.2d 733, 735–36 (3d Cir. 1989).

of discriminatory motive is critical" for disparate-treatment claims, while such proof is not required for disparate-impact claims. Peper v. Princeton Univ. Bd. of Trs., 389 A.2d 465, 478–79 (N.J. 1978). Here, Cronin advanced both theories, as well as a claim for intentional infliction of emotional distress.

*A. Disparate Treatment*

We analyze Cronin's disparate-treatment claim using the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jakimas v. Hoffmann–La Roche, Inc., 485 F.3d 770, 788 (3d Cir. 2007) (indicating that New Jersey courts employ the McDonnell Douglas framework in disparate-treatment cases brought under the NJLAD); Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002) (same). Under this framework, if the plaintiff makes out a prima facie case of discrimination, the burden of production shifts to the employer to "provide a legitimate, nondiscriminatory reason" for the adverse employment decision. Fowler v. AT & T, Inc., 19 F.4th 292, 299 (3d Cir. 2021). If the employer points to such a reason, the burden shifts back to the plaintiff to show that the employer's stated reason was merely pretextual. See id.; see also Sarullo v. U.S. Postal Serv., 352 F.3d 789, 800 (3d Cir. 2003) (per curiam) (explaining that a plaintiff must provide "evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action" (internal quotation marks omitted)). It is not enough to show that the employer's stated reason was wrong or

6

misguided; rather, the reason must be "so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

Here, there is no dispute that, as to her disparate-treatment claim, Cronin established a prima facie case of age discrimination and Booz Allen proffered a nondiscriminatory reason for her termination: Cronin was less qualified for the new role than the candidates who were selected as HRTCs. Accordingly, Cronin then had to show that Booz Allen's reason was pretextual.

Cronin emphasized four parts of the record to demonstrate pretext: (1) her history of positive performance; (2) Booz Allen's retention of younger, less-qualified HRBPs as HRTCs during the transition; (3) Booz Allen's hiring of younger HRBPs in 2014 and 2015—when Booz Allen management allegedly knew that the HRBP position would be eliminated—and its later retention of those new hires as HRTCs in 2017; and (4) Booz Allen decisionmakers' alleged comment, made during a March 2017 conference call with the HRBPs, that they were looking for "fresh new blood" to fill the HRTC role. As explained below, and having considered the record as a whole, we agree with the District Court that Cronin has not met her burden at the pretext step of the McDonnell Douglas test.

Regarding past performance, Cronin sought to rely on reviews from 2015 and earlier. But Mitchell's hiring committee decided to rely only on the HRBPs' 2016 review (the most recent evaluation at the time of the transition in 2017). Although Cronin may

disagree with that decision, she has not demonstrated that it is evidence of discrimination. See Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) ("An employer may not use evaluating criteria which lacks any relationship at all to the performance of the employee being evaluated because to do so would be inconsistent with and contradictory to the employer's stated purpose. Absent [that], we will not second guess the method an employer uses to evaluate its employees." (citation omitted)); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee . . . has, in the past, received some good evaluations.").

As to qualifications for the position, it is undisputed that, unlike Cronin, some candidates hired as HRTCs did not possess certain qualifications included in the job description related to education and HR experience. However, as the District Court found, though some of the successful candidates lacking these qualifications were under 40 years of age, some were 40 or over, undermining any suggestion that overlooking these criteria for under-40 candidates amounted to pretext. Furthermore, although Cronin did satisfy these specific criteria, the hiring committee determined that she fell short in other relevant areas. Mitchell said that, in Cronin's interview, Cronin "failed to distinguish herself in a positive manner from the other HRPBs in relation to the HRTC position," "struggled to provide recent examples" of firm-wide HR initiatives with which she had been involved,[3] appeared to lack interest in the new position, and did not seem to

---

[3] Mitchell's handwritten notes from Cronin's interview included the words "10 yrs old" and "Old" next to the dated examples provided by Cronin. (App. at 342). Nothing in the

8

appreciate the nature of, or the need for, the change from the HRPB role to the HRTC role. (App. at 333, ¶ 10.)  Ultimately, Mitchell saw Cronin as "an 'order taker' as opposed to a 'consultant.'"  Dist. Ct. Op. 24 (citing ECF No. 24-25 at 4, ¶ 12).  In contrast, one under-40 applicant whom Cronin identifies as lacking certain qualifications was considered a better fit for the HRTC role because his superiors specifically praised his consulting skills and Mitchell noted that he "had a resume with recent consulting experience."  Id. (citing ECF Nos. 24-21 at 2; 29-26 at 2, 3).

Next, Cronin complained about Booz Allen's hiring of new HRBPs in the years leading up to the transition from the HRBP role to the HRTC role.  Between January 1, 2015,[4] and March 1, 2017 (after which the HRTC application and selection process began), Booz Allen hired eleven new HRBPs.  See ECF No. 24-1 at 23; ECF No. 29-1 at 13.  We are not persuaded by Cronin's argument that this hiring is evidence of pretext.  In the first place, there is nothing facially troubling about the age breakdown of this small set of new hires: five were age 40 or over, while six were under age 40.  Moreover, Cronin did not provide any information about the applicant pool from which Booz Allen

_____

record supports an inference that the word "old" in either case was a reference to Cronin's age.

[4] Cronin's assertion that Booz Allen "knew that the HRBP role would change" in 2014 is not supported by the record.  Some executives who recommended that Booz Allen should adopt Workday were aware as early as 2014 that it would impact HRBPs, see ECF No. 29-8 at 11, but Booz Allen did not decide to adopt Workday until 2015, see ECF No. 29-9 at 10, ¶ 14.  With this in mind, we analyze Cronin's argument based solely on the data the parties supplied from 2015 onward.

9

hired these 11 individuals, let alone demonstrate that Booz Allen selected candidates under the age of 40 in disproportionate numbers relative to the composition of that applicant pool.

Finally, Cronin claims that Mitchell or another member of the hiring committee commented that, in making the transition from HRBPs to HRTCs, Booz Allen was seeking "fresh new blood." Courts generally reject the proposition that "new blood" or equivalent phrases, standing alone, evince age discrimination. See, e.g., Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 75 (1st Cir. 2011) ("[New blood] is a profoundly ambiguous remark that is 'much too innocuous to transform routine managerial decisions into something more invidious.'" (internal quotation marks omitted)); Fortier v. Ameritech Mobile Commc'ns., Inc., 161 F.3d 1106, 1113 (7th Cir. 1998) (holding that the term "new blood" in the abstract simply means a change and is not direct evidence of age discrimination). Here, even when viewed in light of the entire record, we discern no error in the District Court's conclusion that this comment is not direct or circumstantial evidence of discrimination.

In sum, viewing the record as a whole, Cronin has not shown that Booz Allen's assertion that she was less qualified than the other candidates for the HRTC role was "so plainly wrong that it cannot have been [Booz Allen]'s real reason." Keller, 130 F.3d at 1109. Accordingly, we will affirm the District Court's grant of summary judgment in Booz Allen's favor on Cronin's disparate-treatment claim.

*B. Disparate Impact*

Disparate-impact claims brought under the NJLAD are also evaluated with reference to federal standards. See Gerety, 877 A.2d at 1237–38. "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 987 (1988). To state a prima facie case for disparate impact, a plaintiff must identify a specific, facially neutral employment policy, then proffer statistical evidence that the policy caused a significant age-based disparity. Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 69 (3d Cir. 2017).

As Booz Allen argues, the statistical evidence Cronin provided was insufficient to advance a prima facie case of disparate-impact discrimination.[5] The Supreme Court has noted that "typical examples" of "weaknesses" in statistical evidence include "small or incomplete data sets and inadequate statistical techniques." Watson, 487 U.S. at 996–97. Cronin's case suffers from those very weaknesses. The data sets are small, and Cronin, despite being represented by counsel in the District Court, offered only the raw data instead of presenting any statistical analysis of that data. Accordingly, we will affirm the District Court's grant of summary judgment in Booz Allen's favor on this claim.

---

[5] Cronin attempts to present additional statistical evidence on appeal, but our appellate review is limited to the record upon which the District Court decided Booz Allen's summary-judgment motion. See Moore v. City of Philadelphia, 461 F.3d 331, 344 n.5 (3d Cir. 2006).

*C. Intentional Infliction of Emotional Distress*

Finally, Cronin's complaint included a claim for intentional infliction of emotional distress ("IIED"). As the District Court noted, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery" on an IIED claim. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); see Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1115 (N.J. 2009) ("[An IIED plaintiff] must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is . . . so severe that no reasonable person could be expected to endure it." (internal quotation marks and citation omitted)). Cronin has failed to present evidence demonstrating that this might be one of those extremely rare cases. Accordingly, we will affirm the District Court's grant of summary judgment for Booz Allen on this claim.

IV.

In view of the above, and having determined that all of the arguments preserved in Cronin's briefing are unpersuasive, we will affirm the District Court's order granting summary judgment in favor of Booz Allen on all claims.[6]

---

[6] We grant Booz Allen's motion to supplement the appendix with (1) filings and docket entries from the District Court proceedings and (2) copies of the unpublished decisions cited in Booz Allen's brief.