**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2763
_____

CHARLES F. BURDGE,

Appellant

v.

VERIZON CORPORATE RESOURCES GROUP LLC

_____

Appeal from the United States District Court
for the District of New Jersey
(No. 3:19-cv-19599)
District Judge: Honorable Michael A. Shipp

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, Circuit Judges

(Opinion filed November 27, 2024)

AMBRO, Circuit Judge

Charles Burdge brought age-discrimination claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(l), and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. §§ 10:5-4, 10:5-12, against his former employer, Verizon Corporate Resources Group LLC ("Verizon"). The District Court entered summary judgment for Verizon on those claims, which concerned Verizon's decision not to hire him for three positions during a reorganization. Burdge appeals the summary judgment decision as to two of those positions: the Claims Consultant and Treasury Manager positions.

We affirm the District Court. On the Claims Consultant position, Burdge's claim fails because he does not adequately demonstrate that Verizon's stated reasons for failing to hire him were pretextual. As for the Treasury Manager position, his claim fails at the *prima facie* stage because he was not qualified for the role.

## I. BACKGROUND

Burdge joined Verizon as a Risk Management Consultant in 2006 at age 49. In 2017, Verizon initiated a "Treasury Transformation," which terminated positions at the manager level and below and created fourteen new positions in the Risk Management

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Department. Affected employees could apply for one or more of the new positions. Burdge's job was eliminated, so he applied for three positions: Claims Consultant, Treasury Manager, and Claims Manager. His appeal pertains only to the first two.

In November 2017, David Cammarata (Executive Director of Risk Management) and Mark Denesevich (Director of the Captives Group) interviewed Burdge for the Consultant position. They concluded that he met the minimum qualifications for it. Nevertheless, in March 2018, William McCullough (Director of Claims) met with Burdge to inform him that he was not selected because Verizon preferred a candidate with "digital/data mining/accounting" experience. App. 480. In April 2018, Michael Park, then age 41, was hired for the Consultant position. Park had experience with large data sets and a degree in computer science.

Also in November 2017, McCullough interviewed Burdge for the Treasury Manager position. Citing Burdge's "Interview Responses" and "Tech/Analytic Skills," McCullough decided Burdge was not qualified. App. 297–98, 618. Days later, Cammarata also interviewed Burdge for the Treasury Manager position. Verizon informed Burdge that he was not selected for that position in February 2018. Edward Solovay, age 46 at the time, was hired instead. Verizon then terminated Burdge's employment, effective July 13, 2018.

Burdge claims that Verizon employees made numerous comments that suggest age-based discrimination. He alleges that in April 2018, after he had been rejected for the positions to which he applied, McCullough asked him whether he was entitled to a retirement package. He also alleges that in December 2017 he overheard Denesevich and

3

James Beckert (Verizon's Executive Director/Assistant Treasurer of Pension and Benefits) discussing an unknown candidate's age and how his or her age might affect the hiring decision. And he alleges that McCullough encouraged another employee to retire as part of the Treasury Transformation. Finally, Burdge argues that statistics demonstrate a discriminatory motive: after the Treasury Transformation, the average age of employees reporting to Cammarata and McCullough fell by eight years and thirteen years, respectively.

Burdge filed his complaint in the District of New Jersey in October 2019. He alleged that when Verizon did not hire him for any of the roles to which he applied, and instead terminated him, it violated the ADEA and NJLAD. Verizon moved for summary judgment, which the District Court granted.

Regarding the Treasury Manager position, given Burdge's management experience, the District Court found that he could not make out even a *prima facie* case of discrimination because he failed to satisfy the objective "strong management background" qualification for the position. App. 13. As to both managerial positions and the Consultant position, the District Court further found that Burdge "failed to introduce evidence that would lead a reasonable factfinder to find that Verizon's reasons for not hiring him following the restructuring were pretextual and motivated by discriminatory animus." App. 18.

Burdge appeals the District Court's grant of summary judgment to Verizon as to the Consultant and Treasury Manager positions, but not the Claims Manager position.

4

## II. ANALYSIS

We review summary judgment decisions *de novo*. *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 708 (3d Cir. 2018). We will affirm the grant of summary judgment if, drawing all reasonable inferences in Burdge's favor, there is no genuine dispute of material fact and Verizon should have prevailed as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). We apply a burden-shifting framework to discrimination claims involving only circumstantial evidence: (1) the plaintiff must make a *prima facie* case of discrimination; (2) the employer must then give a legitimate and nondiscriminatory reason for the adverse employment action; and (3) the plaintiff must then show that the employer's proffered reason for the action is pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see also Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (applying the *McDonnell Douglas* framework to ADEA claims); *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 788 (3d Cir. 2007) (applying the same to age-discrimination claims under the NJLAD).

To establish a *prima facie* case under the ADEA, a plaintiff must show that he: (1) was 40 years of age or older at the time of the relevant conduct; (2) has suffered an adverse employment action; (3) was qualified for the position; and (4) "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (internal citation omitted). To prove pretext, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

5

rationally find" the employer's explanations "unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotation marks, citation, and emphasis omitted).

## A. Consultant Position

With respect to the Consultant position, the District Court concluded that Burdge met his *prima facie* burden but failed to demonstrate that Verizon's proffered reasons for choosing not to hire him were pretextual. On appeal, Burdge argues that the Court applied an improperly heightened legal standard and ignored critical evidence in its pretext analysis. We disagree and affirm. In doing so, we address each of Burdge's contentions about pretext for the Claims Consultant position in turn.

Burdge first argues that Verizon's comparison between his and Park's qualifications is a "factually impossible *post hoc* rationalization" because Park applied for the Consultant position after Verizon made its decision not to hire Burdge. Opening Br. 31. But Burdge invited the comparison of qualifications when he claimed that he was "[t]he most qualified person" for "all three of th[e] positions" to which he applied. App. 123 ¶ 130. We are therefore unpersuaded that the comparison was evidence of pretext.

Burdge next asserts that Verizon changed its reason for not hiring him. This claim relates to the previous one because Burdge argues that Verizon moved away from its position that he was less qualified than Park after the timeline of the two hiring decisions became clear. To the extent Burdge's claim rests solely on the comparison between his and Park's qualifications, it fails for the reasons explained above. He also raises an inconsistency in explaining whether McCullough and Cammarata made the Consultant

6

position decision together or McCullough acted alone. Even assuming there was such an inconsistency, it does not render Verizon's explanation "unworthy of credence."[1] *Fuentes*, 32 F.3d at 765. The record shows that both McCullough and Cammarata participated in the hiring process. Any inconsistency about whether they were equal decisionmakers or Cammarata deferred to McCullough does not cast doubt on Verizon's explanation that Burdge "lacked the requisite data analytics skills and did not share the company's vision" for the position. App. 23–24.

Burdge next challenges Verizon's assessment of his qualifications, highlighting positive comments in his past performance reviews about his technical skill and ability to adapt to change. He also emphasizes that Denesevich and Cammarata recommended him for the Consultant position. We are unpersuaded that the performance reviews demonstrate pretext. "[R]eceiv[ing] some favorable comments . . . [and] some good evaluations" is inadequate to show pretext. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d. Cir. 1992) (internal citation omitted). This is particularly true where the positive comments pertain to job performance in a previous position, whereas the challenged action is a hiring decision for a new position. "[I]t is not [a] court's role to second-guess an employer's business judgment as to who is more qualified for the job." *Dungee v. Ne. Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996) (citing *Branson v. Price*

---

[1] In the summary judgment briefing, Burdge suggested that Verizon changed its story to downplay the role of Denesevich, the manager he overheard discussing another candidate's age in relation to a different position. Burdge forfeited that argument here by failing to raise it in relation to the Consultant position on appeal. *Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 124 n.2 (3d Cir. 2020).

*River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)). As for the recommendations for the Consultant position, Verizon explained that its managers used the recommendation section of the interview form to indicate whether a candidate met the minimum qualifications for the position, not to give endorsements for hiring. The recommendations are therefore also insufficient to establish pretext.

In addition, Burdge challenges Verizon's references to incidents for which he was not formally disciplined. The first involved Burdge taking "an active role in a mediation" rather than following his manager's instructions to "defer to [Verizon's third-party] adjuster." App. 82. In another incident, Burdge allegedly took another employee's seat when they moved to an open-plan temporary workspace, and the Human Resources department got involved in the resulting conflict. Because Burdge was never disciplined for these incidents, he contends that Verizon's reference to them is evidence of pretext. That misses the point. A manager raised both incidents with Burdge to convey that he behaved inappropriately. And an employee's past conduct can still bear on a hiring decision even if he was not formally disciplined. In sum, Verizon's references to the incidents are not evidence of pretext.

Further, Burdge argues that Verizon's decision to hire Park, an external candidate, went against "the company's preference for selecting internal candidates" and seeking external ones when "internal candidates were not qualified." Opening Br. at 35. Making all inferences in Burdge's favor and therefore assuming that Verizon had such a policy, the argument still has no bearing on the pretext analysis because it is not a "weakness[],

8

implausibilit[y], inconsistenc[y], incoherenc[y], or contradiction[]" that would enable Burdge to satisfy his burden. *Fuentes*, 32 F.3d at 765.

As for statistical evidence, the District Court ruled that such "evidence of a companywide disparity that relates to the claim at issue is insufficient to rebut a legitimate nondiscriminatory reason for an employer's decision." App. 24. Burdge contends that the District Court misstated the legal standard because the Third Circuit allows plaintiffs to use statistical evidence to show pretext. *Abrams v. Lightolier Inc*., 50 F.3d 1204, 1217 (3d Cir. 1995). But in the passage above, the District Court did not rule that statistical evidence cannot be used. It found that Burdge's evidence here was too general to be persuasive. His contention about the legal standard therefore fails.

We agree with the District Court's conclusion that Burdge's statistical evidence is insufficient to demonstrate pretext. He contends that following the Treasury Transformation, the average age of employees in the Risk Management Group, headed by Cammarata, fell from 52 to 44 and in the Claims Group, headed by McCullough, from 57 to 44. He also emphasizes that all seven employees who were no longer employed by Verizon because of the Treasury Transformation were over 40 years of age. These statistics do not demonstrate pretext. The statistical evidence is incomplete because it does not specify whether employees chose to retire or to apply solely to jobs outside of Verizon, meaning managers would not have had an opportunity to retain them. Burdge's statistics also pertain to the entire Risk Management Department, including the Captives and Insurance Groups, in which he neither worked nor applied. Focusing on the Claims Group, to which Burdge applied, two of the three new employees were over 40 years of

9

age.  In short, the statistics do not "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Verizon's "proffered legitimate reasons" for declining to hire Burdge that "a reasonable factfinder could rationally find" its explanations "unworthy of credence."  *Fuentes*, 32 F.3d at 765 (internal quotation marks, citation, and emphasis omitted).

Burdge next relies on Verizon's use of the phrases "new and fresh ideas," "clinging to the old way," "stagnant," and "resistant to change."  Opening Br. 38–39. These phrases are not sufficient to show pretext.  The Treasury Transformation aimed to implement new automation and data strategies.  It is therefore plausible, or even likely, that the cited phrases referred to those new ideas and changes.  *Cf. Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 75 (1st Cir. 2011) ("[New blood] is a profoundly ambiguous remark that is much too innocuous to transform routine managerial decisions into something more invidious." (internal quotation marks and citation omitted)); *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998) (holding employer's statements that employee had a "low energy level" and was "resistant to change" did not raise an inference of age discrimination); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992) (holding that a "statement referring to 'young blood' [is] not probative of age discrimination or a discriminatory purpose").

Finally, Burdge contends that (1) Verizon's severance policy, (2) a question from McCullough asking if Burdge was entitled to a retirement package, and (3) McCullough's discussion of retirement with another employee, manager Tom Ziegler, demonstrated pretext.  The severance policy was offered to any employees who left and

was based on the amount of time they had worked for Verizon and their salaries. Paying more to employees who have been with the company for longer does not demonstrate pretext for age discrimination. As for McCullough's question, he asked it after Burdge had been rejected. "Stray remarks . . . unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold*, 983 F.2d at 545. McCullough's question was such a stray remark, and he posed it more than a month after the decision regarding Burdge's application. The question therefore does not demonstrate pretext. As for Ziegler, he chose not to apply to any positions during the transformation and instead to retire. The fact that McCullough inquired about his plans "[d]uring the years leading up to [his] retirement" does not demonstrate pretext as to Burdge.

In sum, Burdge failed to demonstrate that Verizon's proffered reasons for declining to hire him for the Consultant position were pretextual.

### B. Treasury Manager Position

The District Court ruled that Burdge failed to state a *prima facie* case of age discrimination with respect to the Treasury Manager position because he did not demonstrate that he was qualified for the position. Burdge contends that the District Court impermissibly considered subjective qualifications at the *prima facie* stage of the analysis when it should have assessed only objective qualifications. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d. Cir. 1995). But Burdge did not present this argument before the District Court. He cannot raise it now because it is forfeited. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d. Cir. 2020).

11

Even if he had not forfeited this argument, however, the qualifications for the Treasury Manager position included "[s]ix or more years of relevant experience with a strong management background." App. 447. While assessments of "leadership or management skill" are subjective in nature, *see Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir. 2000) (internal quotation marks and citation omitted), assessments of experience are not, *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 332 (3d Cir. 2000).

In short, we affirm the District Court's ruling that Burdge failed to state a *prima facie* case of age discrimination for the Treasury Manager position.

\*     \*     \*     \*

For the foregoing reasons, we affirm the District Court's order entering summary judgment for Verizon on the Claims Consultant and Treasury Manager position claims.